IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:10cr477 |
| v. ) | |
| ) | Sentencing Date: June 3, 2011 |
| JARVIS CARLOS LAW. ) | |
| ) | Hon. Claude Hilton |
| Defendant. ) | |

**DEFENDANT'S POSITION ON SENTENCING FACTORS**

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines, and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the Defendant, Jarvis Law, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case.

On March 17, 2009, Mr. Law pled guilty to one count of conspiracy to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 846. There is a statutory mandatory minimum period of imprisonment of 10 years for this offense. In addition Mr. Law also pled guilty to 18 U.S.C. §924(c). In total, there is a statutory minimum period of imprisonment of 15 years for these offenses. Following a final calculation, the PSR states that Mr. Law's offense level is 33, and guideline range is between 211 – 248 months.

Mr. Law objects to this calculation in that it incorporates the "leadership" enhancement. Mr. Law submits to this Court that the appropriate offense level is 29, which would result in a guideline range of 157-181 months. For the reasons set forth below, Mr. Law submits that the

mandatory minimum sentence of 15 years is more than sufficient to accomplish the purpose of sentencing in this case.

## ARGUMENT

### The Defendant's Conduct Does not Warrant an Enhancement Under U.S.S.G.S 3B1.1

The Sentencing Commission has indicated that a court should consider seven factors in determining a defendant's "leadership and organizational role". See U.S.S.G. S 3B1.1. The factors listed in the guidelines include: 1) the exercise of decision making authority, 2) the nature of participation in the commission of the offense, 3) the recruitment of accomplices, 4) the claimed right to a larger share of the fruits of the crime, 5) the degree of participation in planning or organizing the offense, 6) the nature and scope of the illegal activity, 7) the degree of control and authority exercised over others. Id.

**1. The Exercise of Decision Making Authority**

Mr. Law did not posses or exercises any decision making authority during the conspiracy. There is no evidence that he set the prices or terms of negotiations for any of the co-conspirators. Mr. Law knew individuals in New Jersey that could supply him with narcotics. Co-conspirators Randy Johnson and Frank Chapman also knew suppliers from New Jersey and worked with Mr. Law to obtain narcotics to sale in Virginia. On occasion Mr. Law would travel to New Jersey and on other occasions co-conspirators would travel without Mr. Law. The other co-conspirators looked to Mr. Law as a way to purchase more narcotics, but this did not translate to them taking orders or directions from Mr. Law. Once the co-conspirators obtained their narcotics, they sold them on their own terms and to their own customers. Mr. Law had no say as to where or how they sold drugs. The co-conspirators had more experience distributing drugs than Mr. Law, so he was in no position to give them orders or directives. All co-conspirators acted on their own

accord and made their own decisions in regards to their participation in the conspiracy. Each and every co-conspirator was his own boss and manager.

### 2. The Nature of Participation in the Commission of the Offense

Mr. Law's participation revolved around him securing narcotics from New Jersey. Mr. Law's sole customers were other drug dealers in Manassas, Virginia. The dealers would purchase the narcotics from Mr. Law and act on their own accord. The co-conspirators would owe him money for the narcotics, so they would have to re-pay him once they received money from selling the drugs. This does not translate to the premise that these dealers were working for Mr. Law. Courts across the nation, including those in the Fourth Circuit, have held that, "being a buyer and seller of illegal drugs, even in league with more than five or more other persons, does not establish that a defendant has functioned as an "organizer, leader, manager or supervisor" of criminal activity. See *United States v. Anderson*, 189 F. 3d 1201, 1212(10th Cir. 1999); *United States v. Medina*, 167 F. 3d 77, 80-81 (1st Cir. 1999); *United States v. Vargas*, 16 F. 3d 155, 160 (7th Cir. 1994). *Cf. United States v. Bartley*, 230 F.3d 667, 673-74 (4th Cir. 2000) (affirming adjustment, but noting "[t]his is not a case in which a defendant simply supplied drugs and negotiated their sale").

### 3. The Recruitment of Accomplices

There is no evidence that Mr. Law actively pursued accomplices to assist him. All co-conspirators were drug dealers in their own respect, and contacted Mr. Law for the purchase of narcotics. Many of the co-conspirators are from New Jersey and came to Virginia after hearing about the untapped drug market in the Manassas area. Mr. Law did not know many of the co-conspirators before they came to Virginia, so it would be impossible for him to recruit them.

### 4. The Claimed Right to a Larger share of the Fruits of Crime

There is neither any evidence nor statements by co-conspirators that show that Mr. Law held a right to claim a larger share of the fruits of crime. Once the co-conspirators repaid Mr. Law back for the supply, they would keep their own share of the profits made from the sale of narcotics. The fruits of the crime were not shared between the co-conspirators.

5. **The degree of Participation in Planning the Event**

There was no in-depth planning in regards to accomplishing the aims of the conspiracy. The plan was for Mr. Law to sell drugs to his co-conspirators. The co-conspirators would then re-sale the narcotics on their own accord. As a matter of fact, Mr. Law took issue with how many of the co-conspirators went about their business of selling drugs, but he was not in a position to change their activities.

6. **The Nature and Scope of the Illegal Activity**

Mr. Law was the seller of illegal narcotics to other drug dealers in the area of Manassas, Virginia. Mr. Law would use his contacts to purchase narcotics from suppliers in New Jersey and other locations, and would then sale them to other drug dealers.

7. **Degree of Control Exercised over Others**

There is no evidence that Mr. Law exercised control over others involved in the conspiracy. No co-conspirator has presented evidence that they personally saw or heard Mr. Law direct or mandate any action on his behalf that would warrant him being given an adjustment for having a leadership or managerial role. In statements, co-conspirators discuss making trips to New Jersey or wiring money for Mr. Law. As previously stated, Mr. Law did have narcotic connections in New Jersey, and all co-conspirators co-operated to secure those drugs for re-sale in Virginia. Therefore, when co-conspirators traveled to New Jersey or wired money to secure those narcotics, they did this out of self interest.

**APPLICATION OF U.S.C. §3553(a) Factors**

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, *See Rita v. United States*, 127 S. Ct. 2456 (2007). Furthermore, the sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of §3553(a). A sentence of the mandatory minimum 15 years is appropriate following a consideration of the 3553(a) factors.

    A. **The Nature and Circumstances of the Offense**

Mr. Law pled guilty to being involved in a conspiracy to distribute narcotics. Mr. Law was involved in this conspiracy with several other individuals. During his involvement in the conspiracy, Mr. Law would secure narcotics from individuals to sell to other co-conspirators. The co-conspirators would then sell the narcotics in the area of Manassas, Virginia. Mr. Law involvement with street level sales was at a minimum.

B. **The History and Characteristics of the Defendant, the Need to Provide the Defendant with Needed Educational Training, and the Need to Provide Restitution.**

Mr. Law can be described as a person who has faced a challenging life since his teenage years. Mr. Law is 33 years old and is a resident of Virginia, but has lived in various different locations throughout his adulthood. Mr. Law was raised by his mother and father in a household in which his father worked many hours, and spent his free time pursuing interests outside of the home. Mr. Law was one of eleven siblings, and recalls a childhood in which he was active in sports.

At the age of 14, Mr. Law and his brother Jamal were banished from their parent's home in New Jersey. Mr. Law and his brother were homeless and would either stay at relatives' homes or with friends. However, there were nights when they had to sleep outside on benches. Mr. Law recalls that this is when he first experimented with narcotics and alcohol.

Mr. Law maintains that once he was removed from his parent's home, his life changed for the worse. At the age of 14, his life should have been revolving around school and other youthful activities; instead Mr. Law was concerned with surviving. He spent most of his teenage and early twenties moving from one location to another in search of work opportunities. Mr. Law did maintain several jobs throughout this time period.

Although Mr. Law has never been married, he and Salena Toatley (a co-defendant) have maintained a romantic relationship since they were teenagers. Mr. Law and Mrs. Toatley have three children together. Mr. Law also has a fourth child. He has played a major role his children's upbringing and support. His oldest child is thirteen and youngest is six. The family is currently coming to grips with the realization that they will be separated for an extended period of time. This is the fact that hurts Mr. Law the most. He loves his children more than anything,

and knows that he will not be in their lives for at least fifteen years. He knows he will miss at least fifteen birthdays, numerous milestones, and the ability to be present and witness the growth and development of his children.

Despite his involvement with illegal narcotics, Mr. Law has shown the ability to maintain employment in the past. He has also shown a commitment to continuing his education. On the day of his arrest, Mr. Law was scheduled to have a college interview. Mr. Law realizes and understands the benefits that come from maintaining employment with legitimate and legal sources. Upon completion of any ordered confinement, Mr. Law looks forward to re-establishing employment and becoming a productive member of the community.

C. **The Kinds of Sentences Available**

Due to the indictment and nature of charges, Mr. Law's sentence must be at least 15 years of confinement pursuant to the mandatory minimum.

D. **The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and rehabilitation.**

Mr. Law is currently 33 years old. If the court sentences him to confinement within the parameters of the 15 year mandatory minimum, Mr. Law will be approaching his 48th Birthday upon release. Mr. Law will be missing the growth of his children and other family members due to his incarceration. Prior to his arrest, Mr. Law had never served more than a weekend in prison. The mandatory minimum will have the effect of giving Mr. Law is more than enough time to rehabilitate Mr. Law and deter him and others from taking part in similar conduct. Mr. Law realizes that gaining income from the sale of narcotics is neither an acceptable way to earn a living nor acceptable way to provide for his family in between employment.

## CONCLUSION

For the reasons stated above, Mr. Law requests that this court impose the mandatory minimum of 15 years of imprisonment. It is Mr. Law's position that this sentence is sufficient to accomplish the objectives of sentencing as detailed in 18 U.S.C. §3553(a). Mr. Law also requests that the Court impose no fine or costs of confinement or supervision given his limited financial resources and inability to pay. Mr. Law also requests that the Court recommend to the Bureau of Prisons that he be placed in the Residential Drug Abuse Treatment Program for his addictions.

          Respectfully submitted,

          Jarvis Carlos Law
          By Counsel,

By:_____/s/_____
 Jonathan A. Simms
Attorney for Jarvis Law
Simms & Harris, PLLC
11325 Random Hills Road
Fairfax, Virginia 22030
(703) 255 - 3366
(703) 255-6666 (Fax)
Jsimms_esq@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2011 I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Scott Nusbum, Esq.
Assistant U.S. Attorney

2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

  Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing will be delivered to Chambers within one business day of the electronic filing.  A courtesy copy also will be delivered to the U.S. Probation Officer, Third Floor, 401 Courthouse Square, Alexandria, Virginia, 22314.

              By:_____/s/_____
               Jonathan A. Simms
               Attorney for David Johnson
               Simms & Harris, PLLC
               11325 Random Hills Road
               Fairfax, Virginia 22030
               (703) 255 - 3366
               (703) 255-6666 (Fax)
               Jsimms_esq@yahoo.com